# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIOSTO LIRA OSORIO,<br><br>      Petitioner,<br><br>      v.<br><br>S. FRAUENHEIM,<br><br>      Respondent. | Case No. 1:17-cv-01579-LJO-EPG-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Ariosto Lira Osorio is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the petition, Petitioner raises the following claims for relief: (1) instructional error; and (2) insufficient evidence that Petitioner harbored the requisite specific intent to sustain lewd or lascivious act conviction on count 3.

For the reasons discussed herein, the undersigned recommends denial of the petition for writ of habeas corpus.

## I.

## BACKGROUND

On August 11, 2014, Petitioner was convicted by a jury in the Kern County Superior Court of sexual intercourse with a child ten years old or younger (count 1) and two counts of lewd or lascivious acts on a child under fourteen years of age (counts 2 and 3). (CT[1] 107–12). On

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on February 9, 2018. (ECF No. 17).

1

September 4, 2015, Petitioner was sentenced to an aggregate imprisonment term of fifty-five years to life. (CT 163–64). On June 9, 2017, the California Court of Appeal, Fifth Appellate District affirmed the judgment. <u>People v. Osorio</u>, No. F072412, 2017 WL 2630087, at *11 (Cal. Ct. App. June 19, 2017). On September 20, 2017, the California Supreme Court summarily denied the petition for review. (LDs[2] 5, 6).

On November 21, 2017, Petitioner filed the instant federal petition for writ of habeas corpus. (ECF No. 1). Respondent filed an answer to the petition. (ECF No. 15).

## II.

## STATEMENT OF FACTS[3]

### I. Relevant Facts From The Prosecution's Case.

#### A. Facts relevant in counts 1 and 2 regarding C.H.

C.H. was born in November of 2001, making her 13 years old at the time of her trial testimony. When C.H. was 10 years old, she was living in an apartment in Kern County with appellant, her mother (Eva), and two older sisters, Irene and Yesenia. Appellant was Eva's boyfriend. Appellant had been living with the family for about a month when the first incident occurred.

#### 1. The incidents in the apartment.

The first incident occurred when appellant was alone with C.H. in a bedroom at the apartment. After saying he wanted to play a game, he pulled down his pants and removed her pants. She told him to stop, but he put his "private part" inside her "private part." Appellant moved his penis in and out for about 20 minutes while grabbing her hair and hands. She told him to stop but he did not listen. She said it felt "weird" and it hurt. He told her not to tell her mother or "he could hurt her."

Appellant repeated this behavior with C.H. on a later date in the same apartment, but she could not remember when it next occurred. She testified it was "[a] lot of times" and "twice a month." At trial, she could not remember how many times appellant did this while she was 10 years old, but she agreed it happened more than 10 times. She was both 10 and 11 years old while residing in this apartment. She said appellant and her mother worked together in the fields and they would typically work every day. About twice a month he would stay home, which is when he would sometimes engage in this activity with C.H.

#### 2. The incidents in the house near Fresno Street.

When C.H. was 11 years old, they moved from the apartment to a house near Fresno Street in Kern County. She turned 12 years old while residing here. While there, appellant continued this behavior with C.H. about three times a month, putting "his private part inside [her] private part." He always told her it was a game.

[2] "LD" refers to the documents lodged by Respondent on February 9, 2018. (ECF No. 17).
[3] The Court relies on the California Court of Appeal's June 9, 2017 opinion for this summary of the facts of the crime. <u>See</u> <u>Vasquez v. Kirkland</u>, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

### 3. C.H. informs Yesenia of appellant's actions.

While they lived in the house near Fresno Street, C.H. told her older sister, Yesenia, what was happening with appellant. Yesenia told C.H.'s father, who sent Eva a text message, which Eva received while appellant was present. Appellant told C.H. to tell Yesenia that she (C.H.) made up these allegations because she was mad at appellant. C.H. then told Yesenia that her statements were not true. C.H. testified she did so because appellant was watching her. C.H. never told her mother about what was happening because once her youngest sister (L.O.) was born, appellant told C.H. "something could happen" to her little sister. C.H. was afraid. At trial, Yesenia testified that she did not contact law enforcement then because C.H. had said she was making it up.

### 4. The incidents in the house on Badger Street.

In approximately February 2014 the family moved to a house on Badger Street in Kern County. C.H. was residing at this location when she testified in appellant's trial. At the Badger Street house, appellant continued his behavior with her approximately three times in two months. He stopped before her 13th birthday. During this time, he told her again not to tell anyone. C.H. testified that he kissed her most of the time during sexual activity, and she denied ever telling him that she wanted him to kiss her.

### 5. C.H. again informs Yesenia of appellant's actions.

More than a year after first speaking with Yesenia, C.H. talked to her again about appellant's actions. The conversation started after a church pastor encouraged Yesenia to speak with C.H. C.H. had asked the pastor to pray for her, and the pastor spoke with C.H. alone. The pastor then told Yesenia that C.H. "was hurting a lot." They went home and Yesenia spoke privately with C.H., who confided that appellant had touched her. Yesenia spoke with the pastor, who advised Yesenia to contact law enforcement.

During trial cross-examination, defense counsel referred to the female pastor as "a messenger from God." C.H. agreed with that representation. She indicated that the pastor looked at her and knew appellant had been molesting her. She agreed with defense counsel that the "messenger" told her that appellant had been putting his private part in her private part.

### 6. C.H. speaks with law enforcement.

About a week later, Yesenia took C.H. to the sheriff's office and C.H. talked with a male senior deputy, Jose Perez. C.H. felt uncomfortable and nervous speaking with Perez. She indicated that appellant had sex with her more than 10 times. She said he got on top of her and he was all over her. However, she was not very forthcoming regarding details and she had difficulty expressing specific information. She denied that appellant had "ever played a game" with her at their current house on Badger Street. She denied that appellant would kiss her when he played the game, she denied that he touched her elsewhere, and she denied that he ejaculated.

After being interviewed by Perez, C.H. was taken to a female social worker to explain what happened. With the social worker, C.H. was still nervous and confused. She had trouble giving details. She repeatedly denied anything happening with appellant at the Badger Street house before finally admitting that something had happened around that time. While the social worker was watching her, C.H. wrote the following on a piece of paper explaining what appellant did: "He put his private part on my private part." She did not write more even though

the social worker gave her as much time as needed to write. C.H. explained she did not feel comfortable with the social worker. She again denied that appellant ejaculated. Yesenia went into the room at one point during the interview. C.H. said she did not want to talk anymore about it with Yesenia there, but she also indicated she wanted Yesenia in the room with her.

Based on Perez's encouragement, C.H. went home and wrote a letter explaining what had happened. She wrote the letter alone in her room. Her one-page handwritten letter was admitted into evidence as People's exhibit 4.

### 7. C.H.'s letter to law enforcement.

In the letter, C.H. explained that appellant put his "private part" inside her while at the apartment and afterwards she saw "something white" on the towel he used to clean himself. Appellant told C.H. not to tell her mother. This behavior had been happening "for many weeks and months." She wrote that after they moved from the apartment, appellant continued this behavior, telling C.H. not to tell anyone.

### 8. C.H.'s relevant statements during cross-examination.

On trial cross-examination, C.H. agreed that appellant made her do chores, such as washing the dishes, cleaning the floors, and watching L.O. She admitted that she had known appellant was having an affair with another woman. She also confirmed that she saw "white stuff" come out of appellant's penis. Appellant told her that she could not get pregnant because she had not yet had her period. She denied having any bleeding after the first incident.

### 9. Eva's relevant trial testimony.

At trial, Eva said she had lived with appellant for about four years. She denied knowing that anything inappropriate was occurring between C.H. and appellant. She admitted that one time appellant and C.H. would not allow her to enter a bathroom, which occurred shortly before appellant's arrest. She also admitted that appellant had impregnated another woman while he was living with Eva.

## B. Facts relevant to count 3 regarding L.O.

Appellant and Eva are L.O.'s parents. L.O. was born in July 2012 and she was three years old at the time of appellant's trial.

Both Eva and Yesenia testified that they observed appellant touching L.O. on her "privates" on occasion when he changed her diapers. He would pull on her loose skin in that area. Eva did not think it was right, but she also did not think appellant had bad intentions. She observed him touching L.O. like this more than 10 times. The last time occurred two days before he was arrested. She told him several times not to do it and that she did not like it. He said there was nothing wrong with it, that he was her father, and he did not mean anything bad by doing it. Yesenia heard him say he was just playing. To Yesenia, it did not seem like appellant was just playing and he did not kiss L.O. in an appropriate place.

Eva observed appellant kissing L.O. "[o]n the upper part of her privates." She described him kissing her on "the side parts, like the lips, and above that." She agreed he would lift or pull on L.O.'s "lips" and kiss the same part that he pulled on. Eva testified appellant's actions made her feel uncomfortable. She did not think it was normal.

Yesenia testified she saw appellant kiss L.O.'s vagina "on the outside part of the skin" more than 10 times. He would also open up her "private part" with his

4

hands. Yesenia twice saw appellant open up L.O.'s privates and kiss on the inside part of them. L.O. was under seven months old when this occurred.

On cross-examination, Eva clarified that L.O. was two years old when appellant pulled her vaginal lips. She denied ever seeing appellant penetrate L.O.'s vagina with a finger.

Yesenia testified that appellant would hit Eva. On cross-examination, Yesenia said her mother would allow it to occur so she was not mad at appellant for doing it. However, she said she did not call police regarding appellant's actions with L.O. because "everybody was afraid of [him] because he would beat up my mom all the time for anything."

Perez testified that he interviewed Eva on the day appellant was arrested. Eva indicated appellant would play with L.O. and tickle her. L.O. would say, "[P]ull it[,] daddy." Eva clarified "it" referred to L.O.'s vaginal lips.

### C. Appellant's interview with law enforcement.

Perez arrested appellant and interviewed him. The interview was recorded and played for the jury. Early in the interview, Perez said he was doing an investigation about sexual abuse. Appellant asked if semen had to be found in order for a woman to accuse him. Perez said the interview involved C.H. and L.O.

### 1. Appellant's comments regarding L.O.

Appellant was asked to explain what he does when he changes L.O.'s diaper. Appellant initially denied kissing L.O. on her vagina and then said "I almost never do that but I do bite her leg, her (stomach) and everything but no—no—I haven't kissed that." He continued denying that he ever kissed L.O. on her vagina. He denied stretching the labia of her vagina and then said "I almost never do." He admitted spanking L.O., including hitting her on the vagina. When asked to describe how, appellant said "like caressing her[.]" He again denied that he ever stretched open the labia of her vagina or kissed her vagina.

When confronted about Eva's statements, saying he had stretched the labia and kissed L.O.'s vagina, appellant stated, "Maybe if I did it, it was once (unintelligible)." He said he could not remember when it happened, saying "it's been a long time." When asked how many times he has kissed her on the vagina, appellant said "maybe when she was younger, perhaps yes, but not anymore now." He said it was playing.

When asked it if was normal to kiss a baby's vagina, appellant said, "It could be." He explained because "she would play with me, she would laugh and everything but that's it." He denied being aroused by it. He said he did not remember if he had done that recently and said "it's been a long time" since he stretched the labia. He said he had no "bad intentions" when doing it, but it was "a joke" and playing. He denied putting his tongue inside the vagina, but said he "perhaps" kissed her vagina "but not with bad intentions." He admitted kissing her on her vagina "two or three times." He said he only stretched out her labia once. He denied it was a common occurrence. He later again denied kissing the vagina. Still later, he said he did nothing with bad intentions or "on purpose." He said he only kissed the vagina when "playing around."

### 2. Appellant's comments regarding C.H.

Regarding C.H., appellant initially denied that anything had happened. After being threatened that law enforcement had done "tests" and interviews, and they

knew the "first time" occurred at the apartment, appellant said C.H. asked him if he wanted "to be with her." They were alone and he kissed her on her face and mouth. He denied anything else happening after the kiss. Appellant denied that C.H. was 10 years old when this happened, saying she was older. He said C.H. was passing by him, and she kissed him on the face and mouth. He denied that anything more happened. Appellant agreed that she was about 11 or 12 years old when this happened. He agreed she "got close" to him and he kissed her without thinking. He denied having any sexual relations with her, and he denied saying he was going to play "a game" with her. He said he touched her vagina when they were playing and wrestling. She kissed him. He then gave her a massage and nothing more. He said he touched her bra but denied taking it off or touching her breasts. He then said he touched one breast and denied putting his hand down her pants. He denied taking off his clothes when wrestling with C.H. He continued denying that he placed his penis inside her vagina. He said he touched her vagina "[m]aybe by accident" when wrestling, which she wanted to do.

**D. Appellant's three letters written after his arrest.**

After appellant was arrested, Eva received three letters from him, which were introduced into evidence. At the end of the first letter, appellant said "[C.H.] needs to be alert [*sic*] she has to say that everything is a lie." In the second letter, appellant reiterated that "she" has to say everything is a lie. He mentioned buying a laptop and giving her $100 if "the secret" was kept for him. In the final letter, appellant said he saw the paper that C.H. wrote accusing him. He wanted C.H. to say that she was told what to write and it was a lie. He wanted Eva's daughters to "be on the same page" about their story before going to court. He asked Eva to say he was never alone in the house and they were always together. He directed Eva to destroy or burn the letter to make sure it was not found.

**II. Defense Evidence.**

The defense called one witness, a deputy sheriff who spoke with Yesenia in November 2014. Yesenia told the deputy that appellant had touched C.H.'s private parts. Yesenia, however, never mentioned rape or anything of that nature.

Osorio, 2017 WL 2630087, at *1–5.

### III.

### STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged convictions arise out of the Kern County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

///

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 135 S. Ct. 2187, 2198 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards" apply. Ayala, 135 S. Ct. at 2198. However, if the state court did not reach the merits of the claim, the claim is reviewed de novo. Cone v. Bell, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A

state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

AEDPA requires considerable deference to the state courts. The Court looks to the last reasoned state court decision as the basis for the state court judgment. See Brumfield v. Cain, 135 S. Ct. 2269, 2276 (2015); Johnson v. Williams, 133 S. Ct. 1088, 1094 n.1 (2013); Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

2003). The federal court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." <u>Richter</u>, 562 U.S. at 102.

## IV.

## REVIEW OF CLAIMS

### A. Instructional Error

In his first and second claims for relief, Petitioner asserts that the trial court erred by failing to instruct the jury *sua sponte* on simple battery and statutory rape as lesser-included offenses of count 1. (ECF No. 1-1 at 21, 38).[4] Respondent argues that Petitioner's claims fail to present a federal constitutional question. (ECF No. 15 at 19–22).

1. <u>Legal Standard</u>

<u>Beck v. Alabama</u>, 447 U.S. 625 (1980), held that due process is violated in a *capital* case "when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict." 447 U.S. at 627. The Supreme Court expressly declined to determine whether due process requires giving a lesser included offense instruction in noncapital cases. <u>Id.</u> at 638 n.14. The Ninth Circuit has declined to extend <u>Beck</u> to noncapital cases, <u>Solis v. Garcia</u>, 219 F.3d 922, 929 (9th Cir. 2000) (per curiam), and recognized that "[t]here is no Supreme Court precedent establishing that a state trial court is required to instruct on lesser included offenses in noncapital cases," <u>Bortis v. Swarthout</u>, 672 F. App'x 754, 754 (9th Cir.), <u>cert. denied sub nom.</u> <u>Bortis v. Arnold</u>, 137 S. Ct. 1605, (2017). Although "'the failure of a state court to instruct on a lesser offense [in a non-capital case] fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding' . . . the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule." <u>Solis</u>, 219 F.3d at 929 (alteration in original) (quoting <u>Bashor v. Risley</u>, 730 F.2d 1228, 1240 (9th Cir. 1984)).

---

[4] Page numbers refer to the ECF page numbers stamped at the top of the page.

1       2.  <u>Simple Battery Instruction</u>

2         In his first claim for relief, Petitioner asserts that the trial court erred by failing to instruct

3    the jury *sua sponte* on simple battery as a lesser-included offense of count 1. (ECF No. 1-1 at

4    21). This claim was raised on direct appeal to the California Court of Appeal, Fifth Appellate

5    District, which denied the claim in a reasoned decision. The claim also was raised in the petition

6    for review in the California Supreme Court, which summarily denied the petition. As federal

7    courts review the last reasoned state court opinion, the Court will "look through" the summary

8    denial and examine the decision of the California Court of Appeal. <u>See</u> <u>Brumfield</u>, 135 S. Ct. at

9    2276; <u>Ylst</u>, 501 U.S. at 806.

10        In denying the instructional error claim regarding simple battery, the California Court of

11   Appeal stated:

12   **I. The Trial Court Did Not Err In Failing To Instruct The Jury Regarding**
13   **Battery In Count 1 And Any Presumed Error Was Harmless.**

14   In count 1, the jury convicted appellant of engaging in sexual intercourse or
     sodomy with C.H., a child 10 years old or younger, in violation of section 288.7,
15   subdivision (a). He contends the trial court committed prejudicial error under state
     law and violated his federal rights to due process when it failed to instruct the jury
16   in count 1 regarding battery under section 242.

17     **A. Background.**

18   **1. Jury instructions.**
     After both parties rested at trial, the court discussed proposed jury instructions
19   with counsel. Neither party requested, nor did the trial court give, an instruction
     on battery under section 242 as a lesser included offense in count 1.

20   **2. Relevant closing arguments.**
     During closing arguments, defense counsel conceded that appellant "probably"
21   committed the allegation in count 2, which charged him with willful and lewd or
     lascivious acts upon C.H. when she was under the age of 14 years. He told the
22   jury he would not discuss count 2 during closing arguments.

23   Regarding count 1, defense counsel argued only C.H.'s testimony established she
     was 10 years old when the crime occurred. He urged the jurors to find appellant
24   not guilty in count 1 if they believed she was 11 years old when the sexual
     intercourse began. He noted she was both 10 and 11 years old while living in the
25   apartment, and it was open to interpretation whether she was actually 10 years old
     as she claimed. He questioned whether sexual intercourse occurred. He asserted
26   that the "messenger from God" first planted the idea of rape in C.H.'s mind when
     they spoke at church. When speaking with Perez and the social worker, C.H.
27   denied the allegations and did not give any details. She denied that anything
     happened at the most recent residence on Badger Street, and she changed her
28   story when Yesenia came into the interview room. Defense counsel asked the

jurors to view C.H.'s testimony with caution because "she could only give specific details about what happened when she went home." He asked the jurors to find appellant not guilty on counts 1 and 3.

### 3. The jury's note.

During jury deliberations, the jury sent a note to the court asking for Eva's testimony regarding the dates when appellant and the family lived together, and when they moved to different addresses. In the same note, the jury also asked for the transcript of C.H.'s testimony. After conferring with counsel, the court provided the requested evidence to the jury.

### B. Standard of review.

We independently review on appeal whether a trial court has allegedly failed to instruct on a lesser included offense. (*People v. Nelson* (2016) 1 Cal.5th 513, 538.) A trial court is required to instruct the jury on a lesser included offense only if there is substantial evidence that absolves the defendant from guilt of the greater offense but not the lesser. (*Ibid.*) This requirement is not based on any evidence no matter how weak. Instead, the evidence must show a jury could conclude the lesser offense was committed but not the greater. (*Ibid.*) In reviewing this claim, we are to view the evidence in the light most favorable to appellant. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.)

### C. Analysis.

" '[A] lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations.]' [Citation.]" (*People v. Licas* (2007) 41 Cal.4th 362, 366.) A trial court must instruct on a lesser included offense if substantial evidence supports it. (*People v. Rountree* (2013) 56 Cal.4th 823, 855.) The duty to instruct in this regard arises from the evidence at trial and not from the arguments of counsel. (*People v. Barton* (1995) 12 Cal.4th 186, 203.)

"A battery is any willful and unlawful use of force or violence upon the person of another." (§ 242.) Punishment is typically six months in county jail and/or a fine. (§ 243, subd. (a).) However, when the battery is committed against a person with whom the defendant is cohabitating, punishment is up to a year in county jail and/or a fine. (*Id.*, subd. (e)(1).)

In contrast, section 288.7 is violated when a person 18 years of age or older engages in sexual intercourse or sodomy with a child who is 10 years of age or younger. (§ 288.7, subd. (a).) Punishment for section 288.7, subdivision, (a), is a term of 25 years to life in state prison.

The parties disagree whether battery is a lesser included offense of sexual intercourse or sodomy with a child 10 years of age or younger. Both parties agree no California authority resolves this issue. The parties also disagree whether substantial evidence exists in this record to support a battery instruction.

To address appellant's claim, we need not, however, resolve the parties' dispute regarding whether or not battery is a lesser included offense of sexual intercourse or sodomy with a child who is 10 years of age or younger. Even when we presume, without so holding, that battery was a lesser included offense in this case, substantial evidence does not support its instruction. Further, we find any presumed instructional error harmless.

**1. Substantial evidence does not support a battery instruction.**

Appellant argues there are credibility issues associated with C.H.'s testimony. He notes she retracted her first allegations made to Yesenia, she was not very forthcoming when Perez and the social worker interviewed her, she could not recall when appellant next had intercourse with her after the first incident, and she had a motive to lie. In light of appellant's admissions that he kissed her, he maintains the jury could have reasonably concluded that he touched her in a sexual manner but did not have intercourse with her when she was 10 years old or younger. He asserts a battery instruction should have been given. We disagree.

Appellant admitted no direct evidence at trial to refute C.H.'s testimony that he had sex with her at least 10 times when she was 10 years old. During his interview with Perez, he denied having any sexual intercourse with her and he implied that she initiated contact with him, including kissing. He indicated that any touching was accidental. He said she wanted to wrestle.

We reject appellant's contentions that C.H.'s inconsistent prior statements, along with appellant's denials, is substantial evidence that only a battery occurred and not a violation of section 288.7, subdivision (a). The record does not reflect that appellant used force or violence upon C.H. other than the evidence of unwanted sexual intercourse. When viewed in the light most favorable to appellant, substantial evidence does not absolve appellant from guilt of section 288.7, subdivision (a), and establish battery. Accordingly, the trial court was not required to instruct the jury as appellant now claims.

**2. Any presumed instructional error was harmless.**

The failure to instruct on a lesser included offense in a noncapital case is an error of state law and appellate review for prejudice occurs under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Breverman* (1998) 19 Cal.4th 142, 178.) Under this standard, we review the entire record to determine if it is reasonably probable a more favorable outcome would have occurred. (*Ibid.*) We ask what a reasonable jury is likely to have done in the absence of the alleged error. We may consider, among other things, the relative strength of the evidence supporting the judgment versus the evidence supporting a different outcome. We ask whether there is a reasonable probability the error affected the result. (*Id.* at p. 177.)

Here, appellant argues the jury's note demonstrates it had questions as to whether C.H. was actually 10 years old at the time the alleged sexual intercourse occurred at the apartment. He contends that had the battery instruction been given "the jury would have found either that any sexual intercourse that took place occurred when she was older than 10, or that sexual intercourse never took place but some form of sexual touching did." He asserts there is a reasonable chance the jurors found him guilty because they had "no viable alternative and were reduced to making an all or nothing choice."

We disagree with appellant's contentions. Even when we presume instructional error occurred, prejudice did not result.

C.H. was clear in her direct testimony that appellant had sexual intercourse with her more than 10 times when she was 10 years old. In addition to this evidence, the jury was able to view appellant's letters that he wrote after being arrested. At the end of the first letter, appellant said "[C.H.] needs to be alert [*sic*] she has to say that everything is a lie." In the second letter, appellant reiterated that "she" has to say everything is a lie. He mentioned buying a laptop and giving her $100

if "the secret" was kept for him. In the final letter, appellant said he saw the paper that C.H. wrote accusing him. He wanted C.H. to say she was told what to write and it was a lie. He wanted Eva's daughters to "be on the same page" about their story before going to court. He asked Eva to say he was never alone in the house and they were always together. He directed Eva to destroy the final letter.

Appellant's letters are strong circumstantial evidence of his guilt. He mentioned "the secret" and he attempted to influence the witnesses' testimony against him. He directed Eva to destroy the final letter.

Finally, during closing arguments, defense counsel conceded appellant's guilt regarding count 2, but he asked the jurors to reject C.H.'s testimony that the sexual intercourse occurred when she was 10 years old. In rendering its verdicts, it is clear the jury found C.H.'s testimony credible in this regard.

The relative strength of the evidence supporting the judgment is strong. In contrast, the evidence that only a battery occurred is extremely weak. Based on this record, there is no reasonable probability any presumed instructional error affected the result. Accordingly, prejudice is not present and this claim fails.

Osorio, 2017 WL 2630087, at *5–7.

To the extent that Petitioner asserts that the state trial court violated due process by failing to instruct the jury *sua sponte* on simple battery as a lesser-included offense of count 1, the Court finds that Petitioner fails to present a federal constitutional question. Petitioner also fails to show that this claim falls within the exception to the general rule based on a defendant's right to jury instructions on the defense theory of the case. See Solis, 219 F.3d at 929. As established by defense counsel's closing argument, the defense theory was that C.H.'s testimony should be doubted and treated with caution. (3 RT[5] 446, 473–74). Only C.H.'s testimony established that she was ten years old at the time of the offense. However, C.H. also testified that she was both ten and eleven years old when she lived at the apartment. (3 RT 463–65). Defense counsel declared, "if you thought she could have been 11, you have to find him not guilty." (3 RT 463). Defense counsel also argued to the jury that it was unclear whether sexual intercourse actually took place given C.H.'s inability to provide specific details regarding what occurred and the possibility that C.H. was subject to undue influence by the pastor, Yesenia, and other adults. (3 RT 465–71, 473). As set forth above, Petitioner's defense theory was not that Petitioner committed simple battery. Defense counsel did not present any argument that Petitioner used force or violence upon C.H. rather than engage in sexual intercourse.

---

[5] "RT" refers to the Reporter's Transcript on Appeal lodged by Respondent on February 9, 2018. (ECF No. 17).

Based on the foregoing, the state court's denial of Petitioner's instructional error claim with respect to simple battery as a lesser-included offense of count 1 was not contrary to, or an unreasonable application of, clearly established federal law,[6] nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his first claim, and it should be denied.

### 3. Statutory Rape Instruction

In his second claim for relief, Petitioner asserts that the trial court erred by failing to instruct the jury on statutory rape, California Penal Code section 261.5(a) and (c), as a lesser-included offense of count 1. (ECF No. 1-1 at 38). This claim was raised on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The instructional error claim also was raised in the petition for review in the California Supreme Court, which summarily denied the petition. As federal courts review the last reasoned state court opinion, the Court will "look through" the summary denial and examine the decision of the California Court of Appeal. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806.

In denying the instructional error claim regarding statutory rape, the California Court of Appeal stated:

**II. Statutory Rape Is Not A Lesser Included Offense In Count 1 And Any Presumed Instructional Error Was Harmless.**

Appellant contends the trial court committed prejudicial error under state law and violated his federal rights to due process when it failed to instruct the jury in count 1 on statutory rape pursuant to section 261.5, subdivisions (a) and (c). He argues statutory rape is a lesser included offense of section 288.7, subdivision (a).

**A. Background.**

**1. Relevant pleadings.**

In count 1, the information alleged that "on or about and between 11–13–11 and 11–12–12, [appellant], did willfully engage in sexual intercourse or sodomy with

---

[6] Although the California Court of Appeal did not cite to any federal authority on this issue, the pertinent inquiry is whether it "reasonably applied the principles contained in relevant Supreme Court precedent." Parker v. Small, 665 F.3d 1143, 1148 n.1 (9th Cir. 2011) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). The Supreme Court has noted that a state court is not required to cite or even be aware of its cases under § 2254(d). Early, 537 U.S. at 8.

a child who is 10 years old or younger to wit: [C.H.], in violation of ... section 288.7[, subdivision] (a), a felony."

## 2. The court's discussion with counsel.

During the discussion with counsel regarding proposed jury instructions, appellant's trial counsel indicated he had considered whether an instruction regarding statutory rape was appropriate or not for count 1. He stated he did not think it met the elements test.

The court did not instruct the jury regarding statutory rape.

### B. Analysis.

As noted above in section I, section 288.7 is violated when a person 18 years of age or older engages in sexual intercourse or sodomy with a child who is 10 years of age or younger. (§ 288.7, subd. (a).) Punishment for section 288.7, subdivision (a), is a term of 25 years to life in state prison.

In contrast, statutory rape is violated when a person "engages in an act of unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator ...." (§ 261.5, subd. (c).) Punishment is imprisonment in a county jail not exceeding one year or by imprisonment for 16 months, or two or three years. (§ 261.5, subd. (c); § 1170, subd. (h)(1).)

The parties dispute whether or not statutory rape is a lesser included offense of sexual intercourse or sodomy with a child 10 years old or younger. Appellant notes no California authority resolves this issue. Although he concedes sodomy is not an element of statutory rape, he contends statutory rape is a lesser included offense of section 288.7, subdivision (a), because a person could commit sexual intercourse with a child 10 years old or younger and violate both statutes. The parties also disagree whether substantial evidence exists in this record to support instruction on statutory rape and whether the alleged error was harmless.

We determine statutory rape is not a necessarily lesser included offense of section 288.7, subdivision (a). We further determine any presumed instructional error was harmless in this case.

### 1. Statutory rape is not a lesser included offense in count 1.

To determine whether a lesser offense is necessarily included in a greater offense, we look to either the elements test or the accusatory pleading test. (*People v. Lopez* (1998) 19 Cal.4th 282, 288.) We are to rely on the plain meaning of a statute when determining legislative intent. (*People v. Licas, supra,* 41 Cal.4th at p. 367.)

The elements test is satisfied if all elements of the lesser offense are included in the elements of the greater offense. (*People v. Lopez, supra,* 19 Cal.4th at p. 288.) "Stated differently, if a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former. [Citations.]" (*Ibid.*) "Under the accusatory pleading test, a lesser offense is included within the greater charged offense " 'if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed." [Citation.]' [Citations.]" (*Id.* at pp. 288–289.) We do not consider the trial evidence in determining whether one offense is necessarily included in another. (*People v. Cheaves* (2003) 113 Cal.App.4th 445, 454.)

The Penal Code defines "sodomy" as "contact between the penis of one person and the anus of another person." (§ 286, subd. (a); see also CALCRIM No. 1127.) In contrast, the Penal Code defines "unlawful sexual intercourse" as "an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor." (§ 261.5, subd. (a).) Standard jury instructions define "sexual intercourse" as "any penetration, no matter how slight, of the vagina or genitalia by the penis." (CALCRIM No. 1071; see also CALCRIM No. 1127.)

Here, section 288.7, subdivision (a), prohibits sexual intercourse or sodomy of a child 10 years old or younger. Section 261.5 does not address sodomy in criminalizing "unlawful sexual intercourse" with a minor. Based on a plain reading of these statutes, the criminal conduct that section 288.7, subdivision (a), prohibits could occur without necessarily also violating section 261.5, subdivision (c). Under the elements test, section 261.5 is not a necessarily lesser included offense to section 288.7, subdivision (a).

We reach the same conclusion under the accusatory pleading test. The information alleged in count 1, that "on or about and between 11–13–11 and 11–12–12, [appellant], did willfully engage in sexual intercourse *or sodomy* with a child who is 10 years old or younger to wit: [C.H.], in violation of ... section 288.7[, subdivision] (a), a felony." (Emphasis added.) As alleged, appellant's violation of section 288.7, subdivision (a), would not necessarily have also violated section 261.5, subdivision (c). Accordingly, the trial court had no sua sponte duty to instruct on statutory rape as appellant now asserts.

### 2. Any presumed instructional error was harmless.

Moreover, even when we presume statutory rape was a lesser included offense in this case, we find the alleged instructional error harmless. During closing arguments, defense counsel conceded appellant's guilt regarding count 2, but he asked the jurors to find appellant not guilty on counts 1 and 3. In rendering its verdicts, it is clear the jury found C.H.'s testimony credible.

The evidence overwhelmingly establishes that appellant had sexual intercourse with C.H. starting when she was 10 years old. Based on this record, there is no reasonable probability the alleged instructional error affected the result. Accordingly, prejudice is not present and this claim fails.

Osorio, 2017 WL 2630087, at *7–9.

To the extent Petitioner asserts that the state trial court violated due process by failing to instruct the jury *sua sponte* on statutory rape as a lesser-included offense of count 1, the Court finds that Petitioner fails to present a federal constitutional question. See Solis, 219 F.3d at 929. Further, even assuming an instructional error, the state court's harmlessness determination was not objectively unreasonable. See Ayala, 135 S. Ct. at 2199 (quoting Fry v. Pliler, 551 U.S. 112, 119 (2007)) (holding that when a state court's harmless error "decision is reviewed under AEDPA, 'a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable.'"). As found by the California Court of Appeal, there was

ample evidence that Petitioner had sexual intercourse with C.H. at the apartment. There was no dispute that C.H. was ten and eleven years old when she was living at the apartment, and the only evidence introduced at trial with respect to when the sexual intercourse at the apartment commenced was C.H.'s testimony that she was ten years old. (1 RT 106, 111, 115, 153; 3 RT 463, 478).

Based on the foregoing, the state court's denial of Petitioner's instructional error claim with respect to statutory rape as a lesser-included offense of count 1 was not contrary to, or an unreasonable application of, clearly established federal law,[7] nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his second claim, and it should be denied.

**B. Sufficiency of the Evidence**

In his third claim for relief, Petitioner asserts that there was insufficient evidence that Petitioner harbored the requisite specific intent to sustain his conviction on count 3, a lewd or lascivious act committed on L.O. (ECF No. 1-1 at 45). Respondent argues that the state court's rejection of Petitioner's claim was reasonable. (ECF No. 15 at 22).

This claim was raised on direct appeal in the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The claim was also raised in the petition for review, which the California Supreme Court summarily denied. As federal courts review the last reasoned state court opinion, the Court will "look through" the summary denial and examine the decision of the California Court of Appeal. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806.

In denying Petitioner's sufficiency of the evidence claim, the California Court of Appeal stated:

---

[7] Although the California Court of Appeal did not cite to any federal authority on this issue, the pertinent inquiry is whether it "reasonably applied the principles contained in relevant Supreme Court precedent." Parker, 665 F.3d at 1148 n.1. The Supreme Court has noted that a state court is not required to cite or even be aware of its cases under § 2254(d). Early, 537 U.S. at 8.

### III. Sufficient Evidence Supports The Conviction In Count 3.

Appellant asserts there is insufficient evidence to affirm his conviction in count 3 for a lewd or lascivious act committed on L.O. pursuant to section 288, subdivision (a). He claims there is no evidence he harbored the requisite specific intent.

#### A. Background.

With CALCRIM No. 1110, the court instructed the jury that appellant was charged in counts 2 and 3 with committing a lewd or lascivious act on a child under the age of 14 years. "To prove that [appellant] is guilty of this crime, the People must prove that, one, [appellant] willfully touched any part of a child's body either on the bare skin or through the clothing; two, [appellant] committed the act with the intent of arousing, appealing to or gratifying the lust, passions or sexual desires of himself or the child; and three, the child was under the age of 14 years at the time of the act."

#### B. Standard of review.

For an appeal challenging the sufficiency of evidence, we review the entire record in the light most favorable to the judgment to determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt based on " 'evidence that is reasonable, credible, and of solid value ....' " (*People v. Jones* (2013) 57 Cal.4th 899, 960.) In doing this review, we are not required to ask whether we believe the trial evidence established guilt beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 576.) Rather, the issue is whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt after viewing the evidence favorably for the prosecution. (*Ibid.*) We are to presume the existence of any fact the jury could have reasonably deduced from the evidence in support of the judgment. (*Ibid.*)

#### C. Analysis.

In raising this issue on appeal, appellant concedes that he touched L.O. and kissed her in her vaginal area. However, he argues no rational trier of fact could reasonably conclude he entertained the necessary sexual intent based on the evidence presented because he kissed and touched L.O. with others present. He contends that if he had the necessary sexual intent, he would have believed he was doing something wrong and would have acted in secret. We reject appellant's contentions.

Section 288 imposes criminal liability on anyone who "willfully and lewdly commits any lewd or lascivious act" upon the body of a child under the age of 14 "with the intent of arousing ... the lust, passions, or sexual desires" of either party. (§ 288, subd. (a).)

Our Supreme Court has held that "[w]hether a particular touching is 'lewd' and criminal under section 288 cannot be determined separate and apart from the actor's intent." (*People v. Martinez* (1995) 11 Cal.4th 434, 438.) The "nature or form" of the defendant's actions circumstantially bear on this determination. (*Ibid.*) Section 288 criminalizes behavior that may have an outward appearance of innocence so long as the intent of the act was to arouse the lust, passion or sexual desire of either party involved. (*People v. Martinez*, at p. 444.) In deciding intent, the jurors may examine all of the circumstances, including the defendant's extrajudicial statements, other acts of lewd conduct admitted or charged in the case, the relationship of the parties, and what efforts the defendant used to obtain the victim's cooperation or to avoid detection. (*Id.* at p. 445.)

Here, we reject appellant's argument that evidence of his criminal intent is lacking. Yesenia and Eva described his pattern of conduct regarding touching and kissing L.O. in and around her vagina. Eva said it made her feel uncomfortable, she did not think it was normal, and she told him to stop several times. Appellant, however, continued his behavior until several days before he was arrested. To Yesenia, it did not seem like appellant was just playing and he did not kiss L.O. in an appropriate place.

Yesenia testified she saw appellant kiss L.O.'s vagina "on the outside part of the skin" more than 10 times. He would also open up her "private part" with his hands. Yesenia twice saw appellant open up L.O.'s privates and kiss on the inside part of them. L.O. was under seven months old when this occurred.

Further, during his interview with Perez, appellant provided evasive and inconsistent answers regarding how and where he touched or kissed L.O.'s vagina. He initially denied kissing L.O. on her vagina, but eventually agreed he had "perhaps" done so and did it "two or three times." He said he did it "maybe when she was younger, perhaps yes, but not anymore now." He admitted touching L.O. on her vagina, describing it as "like caressing her[.]" He claimed his actions with L.O. were normal, playing or a game.

In addition to this evidence, the jury also heard appellant's statements regarding his actions with C.H. Although he denied any sexual intercourse with C.H., he claimed he might have accidentally touched her vagina while they were wrestling. He claimed that C.H. initiated the contact and wanted to wrestle.

Sufficient evidence exists in this record to infer that appellant's intent with L.O. was to arouse his lust, passion, or sexual desires. This evidence was reasonable, credible and of solid value. A rational jury could have found the essential elements of section 288 in count 3 beyond a reasonable doubt after viewing the evidence favorably for the prosecution. Accordingly, this claim fails.

Osorio, 2017 WL 2630087, at *9–10.

The Supreme Court has held that when reviewing a sufficiency of the evidence claim, a court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). A reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. State law provides "for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." Coleman v. Johnson, 566 U.S. 650, 655 (2012) (quoting Jackson, 443 U.S. at 319).

Jackson "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 556 U.S. 1, 2 (2011). Moreover, when AEDPA applies, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Id.

In Gonzalez v. Knowles, 515 F.3d 1006 (9th Cir. 2008), the Ninth Circuit addressed a claim similar to the one Petitioner raises as his third claim for relief. Gonzalez argued there was insufficient evidence of the requisite intent under California Penal Code section 288 "because the alleged touchings . . . occurred during 'a wrestling type of play' and because [the victim] did not immediately report them to her parents." Gonzalez, 515 F.3d at 1011 (citation omitted). The Ninth Circuit did "not disturb [the state court's] well-reasoned conclusion," which found that the victim's testimony that she immediately recognized the touchings as improper, struggled to break free, and asked Gonzalez not to touch her that way was sufficient to sustain the conviction. Id. at 1011–12. Similarly, here, Eva testified that Petitioner touching and kissing L.O. in and around her vagina made Eva feel uncomfortable. Eva did not believe such conduct was normal behavior and told Petitioner to stop several times. (2 RT 217–19, 227, 248–49). Yesenia testified that Petitioner did not kiss L.O. in an appropriate place and "anybody who is thinking right, who was in their right mind knows that's not a game." (2 RT 202).

"'After AEDPA, we apply the standards of Jackson with an additional layer of deference' to state court findings." Ngo v. Giurbino, 651 F.3d 1112, 1115 (9th Cir. 2011) (alteration in original) (quoting Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005)). Under this doubly deferential standard of review, and in light of Gonzalez, the state court's denial of Petitioner's sufficiency of evidence claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his third claim, and it should be denied.

**IV.**

**RECOMMENDATION**

Accordingly, the undersigned HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 8, 2018**                    /s/ _Erica P. Grosjean_
                                                   UNITED STATES MAGISTRATE JUDGE